J-S23028-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: M.J.A.S., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: M.J.A.S., A MINOR, | |
| Appellant | No. 3418 EDA 2014 |

Appeal from the Order Entered October 24, 2014
In the Court of Common Pleas of Lehigh County
Juvenile Division at No(s): CP-39-DP-0000147-2014

BEFORE:  DONOHUE, SHOGAN, STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED MAY 20, 2015**

M.J.A.S. ("Child")[1] appeals from the order entered on October 24, 2014, in the Juvenile Division of the Lehigh County Court of Common Pleas. The October 24, 2014 order denied the private dependency petition filed on Child's behalf by the Hebrew Immigrant Aid Society ("HIAS"), a non-profit legal services organization.  The private dependency petition asked the court to adjudicate Child, who is in this Commonwealth and is pregnant and who is in the care, custody, and control of the United States Department of Health and Human Services, dependent pursuant to 42 Pa.C.S. § 6302(1), (3), and

_____

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  Child was born in October of 1996, in Escuintla, Guatemala.

(4) of the Juvenile Act.[2]  HIAS asserted in the petition that an adjudication of dependency would permit Child to apply for Special Immigrant Juvenile Status under federal law.  After careful review, we affirm the denial of the petition.

On September 5, 2014, HIAS filed a private petition for dependency alleging Child was a dependent child pursuant to 42 Pa.C.S. § 6302(1), (3), and (4), and was not currently under the supervision of the Lehigh County Office of Children and Youth Services ("OCYS").[3]  The petition averred that Child was under the supervision and custody of the United States Department of Health and Human Services' Office of Refugee Resettlement ("ORR") as an Unaccompanied Alien Child.  The petition further stated that Child was currently placed in ORR-funded care at KidsPeace in Bethlehem, Pennsylvania.  The petition alleged that it was not viable for Child to be reunited with her parents, who live in Guatemala, or to return to Guatemala due to their abuse and abandonment of her, and the ongoing epidemic of gang violence in Guatemala.  The petition further alleged that, the only way for Child to avoid deportation to her dangerous environment was for the Lehigh County Court of Common Pleas to issue an order declaring her to be a dependent child.  The petition indicated that a dependency order is a

_____

[2]  The Juvenile Act, 42 Pa.C.S. §§ 6301–6375.

[3]  We note that OCYS participated in the proceedings in the trial court as an interested party and filed a Brief of the Interested Party in this Court.

prerequisite for special immigrant juvenile status and continued access to federal foster care services. The petition alleged that it is not in Child's best interest for her to be returned to Guatemala. The prayer for relief in the petition stated:

> Wherefore, Petitioner respectfully requests that this Honorable Court adjudicate this Child dependent and enter an order that will allow her to apply for Special Immigrant Juvenile Status pursuant to [8] U.S.C. § 1101(a)(27)(J).

Dependency Petition, 9/15/14, at 8.

On October 21, 2014, the trial court held an evidentiary hearing at which Child testified on her own behalf. At the close of the testimony, the parties stipulated that the caseworker for KidsPeace, Noemary Vega, would have testified to certain matters had she been presented as a witness. N.T., 10/21/14, at 99-102. The trial court set forth the following:

> On September 5, 2014, pursuant to Pa.R.J.C.P. 1320, Petitioner filed an Application for Private Petition for Adjudication of Dependency for [M.J.A.S.], a juvenile born [in October of 1996]. After hearing on September 16, 2014, we approved the filing of a private petition.
>
> We directed service of the Petition and notice of the hearing date upon the parents, as required by rule. Service on the parents was accomplished, despite the fact that Petitioner had initially claimed that [F]ather's whereabouts were unknown. (*See* Application to File a Private Petition, filed September 5, 2014, which recites "[F]ather's address, Guatemala, whereabouts unknown").
>
> Counsel was appointed to represent the mother, [and] the father, and a Guardian Ad Litem was appointed for [Child]. A hearing was held on October 21, 2014, to consider the allegations in the Petition for Adjudication of Dependency. . . .

At the conclusion of the hearing, we made the following findings:

> 1. The minor who is the subject of this private petition was born in Escuintla, Guatemala, but is presently in Bethlehem, Pennsylvania, at KidsPeace, an institutional provider of human services. She is in the statutory custody and care of the United States Department of Health and Human Services.
>
> 2. Her passage to the United States was paid by ["S."], who resides in the United States and is the paternal grandmother (mother of the putative father) of the minor's unborn child.
>
> 3. The parents of the minor child reside in Guatemala, apparently with sufficient resources to be accessible by phone and to maintain households.
>
> 4. The minor does not wish to live with her parents, but there is no evidence that they are presently refusing to take care of her or that they cannot take care of her as required by statute.

Order of Adjudication — Child Not Dependent, October 24, 2014.

Trial Court Opinion, 12/23/14, at 2-3.[4]

In the order entered on October 24, 2014, the trial court denied the petition. On November 20, 2014, Child, through HIAS, filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In her brief on appeal, Child raises the following issues:

_____

[4] After the filing of the October 24, 2014 order, Child turned eighteen years old later that week.

- 4 -

1. Whether the trial court committed an error of law in holding that a child who lives by herself and has lived by herself for the 4 years immediately preceding the adjudicatory hearing, following abandonment by her parents, is not presently without proper parental care or control[?]

2. Whether the adjudication of M.J.A.S. as Not Dependent should be reversed as a matter of law because the lower court erred by refusing to consider whether M.J.A.S. could be a 'dependent child' by virtue of being "ungovernable" under number (6) of 42 Pa.C.S. § 6302, Definition of "Dependent Child"[?]

3. Whether the trial court committed an error of law in holding that a child who lives by herself and has lived by herself for 4 the [sic] years immediately preceding the adjudicatory hearing is not "abandoned" under 42 Pa.C.S. § 6302, Definition of "Dependent Child" number (3)[?]

4. Whether the trial court committed an error of law and abused its discretion when it failed to effectuate the purposes of the Juvenile Act and to enter an order that was best suited to [Child's] safety, protection and physical, mental and moral welfare pursuant to the Juvenile Act[,] 42 Pa.C.S.A. § 6301(b)(1.1)[?]

Child's Brief at 5.[5]

Our standard of review is set forth below:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the

_____

[5] Child does not argue or make reference to that part of the Juvenile Act that defines a dependent child as one who "is without a parent, guardian, or legal custodian." 42 Pa.C.S. § 6302(4). Thus, she has waived any argument regarding the trial court's refusal to adjudicate her dependent under that definition. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's statement of questions involved and concise statement is deemed waived).

lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). *See also In re A.B.*, 19 A.3d 1084, 1093-1094 (Pa. Super. 2011) (stating that this Court will not infringe upon the juvenile court's credibility determinations). Additionally, "[t]he burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *In re G., T.*, 845 A.2d 870, 872 (Pa. Super. 2004).

Section 6301 of the Juvenile Act provides in pertinent part:

**§ 6301. Short title and purposes of chapter**

* * *

**(b) Purposes.**—This chapter shall be interpreted and construed as to effectuate the following purposes:

(1) To preserve the unity of the family whenever possible or to provide another alternative permanent family when the unity of the family cannot be maintained.

(1.1) To provide for the care, protection, safety and wholesome mental and physical development of children coming within the provisions of this chapter.

42 Pa.C.S. § 6301.

Section 6302 of the Juvenile Act defines a "dependent child" as a child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. **A determination that there is a lack of proper parental care**

**or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]**

\* \* \*

(3) has been abandoned by his parents, guardian, or other custodian;

\* \* \*

(6) has committed a specific act or acts of habitual disobedience of the reasonable and lawful commands of his parent, guardian or other custodian and who is ungovernable and found to be in the need of care, treatment or other supervision.

42 Pa.C.S. § 6302 (emphasis added).

Under 42 Pa.C.S. § 6302(1), "a child will be declared dependent only when he is presently without proper parental care or control, and when such care and control are not immediately available." *In re M.B.*, 101 A.3d 124, 128 (Pa. Super. 2014). Section 6341(a) and (c) of the Juvenile Act provides in pertinent part as follows:

**(a) General rule.—** After hearing the evidence on the petition the court shall make and file its findings as to whether the child is a dependent child . . . .

\* \* \*

**(c) Finding of Dependency.—** If the court finds from clear and convincing evidence that the child is dependent, the court shall proceed immediately or at a postponed hearing, which shall occur not later than 20 days after adjudication if the child has been removed from his home, to make a proper disposition of the case.

42 Pa.C.S. § 6341(a) and (c).

In **In re D.A.**, 801 A.2d 614 (Pa. Super. 2002), a panel of this Court

stated:

> [A] court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

**Id.** at 617.

Regarding the placement of a child who has been adjudicated

dependent, this Court has explained:

> When a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. **See In re Sweeney**, 393 Pa. Super. 437, 574 A.2d 690, 691 (1990) (noting that "[o]nce a child is adjudicated dependent. . . the issues of custody and continuation of foster care are determined by the child's best interests"). Moreover, although preserving the unity of the family is a purpose of the Act, another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S. § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child." **In re E.F.V.**, 315 Pa.Super. 246, 461 A.2d 1263, 1267 (1983).

**In re K.C.**, 903 A.2d 12, 14-15 (Pa. Super. 2006).

As noted above, we are required to accept the trial court's findings of

fact and credibility determinations if they are supported by the record. **In**

*re R.J.T.*, 9 A.3d at 1190. Here, the trial court addressed Child's credibility as follows:

> Although in this instance [Child] is now 18 years old and her parents reside in a foreign country, that should not lessen the burden of proof. And, similarly, when a private petitioner seeks a declaration of dependency, the burden of proof is no less than when OCYS is the petitioner.
>
> The testimony in this case can be summarized as follows: The Child testified at length about her history. Her parents separated when she was about 7 years old. N.T., October 21, 2014, p. 16:11-12. She then seemed to say she lived with her mother until she was 13. N.T., October 21, 2014, p. 27:5-7. During this time her mother would beat her daily, and would drink to excess: and[,] once[,] when she was 11, her mother's husband, who is now an ex-husband, "touched her sexually."
>
> She also testified that she would visit her father briefly[,] but did not want to live with him because he was abusive to the women he was with. The Child detailed one such incident of abuse (she also detailed an accident whereby her younger brother almost drowned, but we found nothing abusive about father in this incident, nothing more than inattentiveness).
>
> The Child testified that she was then left to the care of her sisters when she was 13, while her mother moved to another city. She remained in the family home, under the care of her sisters. She would be in touch with her parents, would visit her parents for a week at a time, but was basically on her own. When she was 17 and pregnant, [S.,] her "mother-in-law," the mother of the putative father, paid for her passage to the U.S. She now lives in the care and custody of KidsPeace, a provider of human services, pursuant to detention by U.S. [Department of] Health and Human Services. "She's not free to leave." N.T., October 21, 2014, pp. 101:25-102:1.
>
> It is the above testimony on which Petitioner relies and contends is sufficient to establish dependency. Even if we found the evidence to be credible, clear and convincing, there was other important testimony, or lack of testimony, which we were obliged to consider.

Pursuant to 42 Pa.C.S.A. § 6302, the first definition of a dependent child is a child "who *is* without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there *is* a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that *places* the health, safety or welfare of the child at risk." We have emphasized the words in the statute that place the determination of dependency firmly in the present tense. While past history may be helpful to evaluate present status, we cannot adjudicate a 17-year-old girl dependent because she was neglected and abused at age 7, 11, or 13. She must be *presently* at risk of abuse or neglect, which was not shown.

Furthermore, even if we are shown that the Child does not have such care, we must also be shown by clear and convincing evidence that such care is not available immediately. ***In re [I]nterest of J.M***., [652 A.2d 877, 880 (Pa. Super. 1995)].

Clearly, by the Child's own testimony, even if believed without reservation, she has parents, and she offered no evidence that they are presently unable to fulfill their parental role pursuant to 6302. Petitioner showed no impediment to an immediate reunification with either her father or her mother, other than her own desire not to reunify, based on incidents which happened years ago[,] and situations which no longer exist.

Even if all [of] the Child's testimony were accepted as true, the testimony describes a history which is not the situation at present. The Child testified that she knows where her mother lives, but chooses not to go back to her because of an incident of sexual touching (without any additional detail) which occurred five years ago by her mother's now ex-husband. There was no testimony, even by the alleged dependent, that her mother's home was presently unsafe or unavailable to her. Her two younger siblings live with her mother. N.T., October 21, 2014, p. 62:21-22. She testified that she last lived with her mother (she described it as a visit) about seven months ago. N.T., October 21, 2014, p. 92. She does not describe how or why that visit seven months ago came to an end. She describes no abuse, violence, or mistreatment at that time.

- 10 -

Likewise, the Child testified that her father lives in his own home in Guatemala City[,] and that she is in contact with him. Both of her parents know she is pregnant. N.T., October 21, 2014, p. 62:23-25; p. 63:1. She is in regular contact with both her parents. N.T., October 21, 2014, p. 63:2-8.

She testified further that her father recently took her younger sister into his home, but that she (the Child) chose not to ask [her father] if she could live with him. The Child testified:

A. Because my sister [St.] called my father and told him that she wanted to go live with him, and she went to the capital and my dad went to pick her up at the bus station.

* * *

Q. And you still do not want to go back to stay with him, correct?

A. No.

N.T., October 21, 2014, pp. 88:23-89:16.

It is not clear and convincing to this court that her parents are an unavailable resource to her, since they are both locatable, the instances of abuse she describes are many years past, and[,] depending on which of the Child's testimony you believe, either both younger siblings live with [her] mother, or one lives with [her mother] and the other lives with [her] father. There is no testimony that either parent is abusing the children presently in their custody, or failing to provide adequate parental care and control. Counsel for the mother spoke to [the] mother very early in the proceedings. "I spoke to her regarding her position regarding the dependency. She was not opposed to the entry. She is not able to be a resource at this time." N.T., October 19, 2014, p. 4:5-19. However, the mother was not present at the hearing[,] and was not subject to cross-examination.

Nor can the court can ignore the fact that the Child is in the care, custody and control of the U.S. Department of Health and Human Services, who has contracted with KidsPeace to provide the child with what she needs. There was no evidence

that any of the needs enumerated under the first definition of "dependent child" in 6302 are not being met by KidsPeace.

Nor was it explained why [S.][,] the ["]mother-in-law["] of the Child and grandmother of her expected child, is not a resource to provide the Child with parental care and control. Obviously, [S.] has an interest in the welfare of the Child, having provided her with the financial means and logistical arrangements to come here from Guatemala.

The Child did not testify that her parents are presently refusing to take care of her, and, thereby, petitioner fails to meet the requirements that she has been abandoned by her parents, guardian or other custodian. [The third definition of dependent child is set forth at 42 Pa.C.S. § 6302(3).]

Clearly she has parents, and, thereby, petitioner fails to meet the requirements of the fourth definition of dependent child. [The fourth definition of dependent child is set forth at 42 Pa.C.S. § 6302(4).] Petitioner would have us believe that the Child's story of suffering should be sufficient to meet the standard of clear and convincing evidence. Sympathy is no substitute for credible evidence. We did not disregard the Child's testimony or deny her the right to be heard. Quite the contrary, we heard her at length (as admitted by the Petitioner). However, the length of testimony does not make it any more convincing. In fact, the testimony was lengthy in large part because of the Child's unclear, inconsistent and vague statements.

Trial Court Opinion, 12/23/14, at 5-9, and corrected page 9, filed 1/2/15

(emphasis in original).

The trial court explained its rationale for finding Child's testimony

unbelievable as follows:

Even if the inference must be drawn that the [C]hild is presently without parental care and control based on distant historical abuse and neglect, this court further finds the Child's testimony about earlier abuse and neglect by her parents to be suspect.

- 12 -

We instruct jurors to look at consistency or inconsistency within the testimony. The alleged dependent claimed that both parents abandoned her when she was 7. N.T., October 21, 2014, p. 13:20-22. She also then testified that her mother hit her almost every day between the ages of 6 or 7 until she was 13 years old, N.T., October 21, 2014, p. 24:13-17, which is inconsistent with her claim that [her] mother had left her at age 7. She specifically testified that when she was age 10, her mother was not living with her. N.T., October 21, 2014, p. 22:1-8. She testified that her mother's husband (now ex-husband) "touched" her when she was 12 and visiting her mother. N.T., October 21, 2014, p. 33:6-13.

She testified that [St.] and [Jr.,] [her siblings,] are presently living with her mother, N.T., October 21, 2014, p. 62:21, but she also testified that [St.] is living with her father. N.T., October 21, 2014, p. 88:22-p. 89.3.

She further testified that her mother asked her to go and live with her[,] but she refused. N.T., October 21, 2014, p. 27:21-23; p. 48: 14-18. She later testified that she did not know when she had last lived with her mother. The passage is significant, because it has the air of evasion.

Q. When was the last time you lived with your mother under the same roof?

A. It's been about seven months.

Q. You lived with your mother seven months ago?

A. Yes. I went to visit her. For a week.

Q. Okay. When is the last time that you resided— when you actually lived with your mother, and not just for a visit.

A. It's been years. I don't remember.

Q. How old were you?

A. I don't remember.

N.T., October 21, 2014, p. 92:3-13.

She testified that she had last lived with her father at age 7, N.T., October 21, 2014, p. 16:11-13, and then she testified that she had last lived with him around [age] 11 or 12. N.T., October 21, 2014, p. 28:22-24. Her testimony as to her whereabouts and her parents' whereabouts when she lived with her parents or just "visited" them are [sic] conflicting in almost every aspect. Every visit was "for a week." While we can understand that a young child might not be aware of details such as these, this child is no longer young[,] and her testimony was inconsistent, not uncertain. Her testimony about her whereabouts and her parents whereabouts is riddled with inconsistencies as to important periods of time, and then becomes just downright evasive.

We also instruct jurors to look for corroboration. There was no other witness to the events claimed by the Child. The law does not require corroboration, but there is nothing contextual which supports this Child's testimony. When a child is before us from another state, the Children and Youth caseworkers obtain materials and investigations from other jurisdictions. This is, of course, difficult or impossible to do when the child is from a foreign nation, but the difficulty of obtaining investigatory evidence does not reduce the burden of proof from "clear and convincing" to something less.

The only corroboration offered was a stipulation that a caseworker at KidsPeace would testify that the Child also told her about the alleged sexual touching, which happened when she was 11 (not 12 as claimed by [Child] during testimony). This was five years ago. The length of time between the supposed event and the report to the caseworker does not make the report as persuasive as a prompt report would be. Although the testimony was stipulated to by all other parties in the case, it is not particularly helpful to the court in evaluating the credibility of the touching. There was no detail as to the exact nature of the touching, it never happened again after the Child complained to [her] mother; and the man who was alleged to have done this is now out of [her] mother's life.

It is clear from the testimony that the Child never lacked for a place to reside. There was much testimony about two homes owned or rented by mother, one in Escuintla and the other in Cocales, as well as a paternal grandmother's home in Guatemala City, in addition to father's home in Guatemala City.

There was frequent testimony about the Child calling both parents, [and] "visiting" both parents, and there was no testimony that they were ever unable to be reached. Both parents were easily located and cooperative when given notice of the proceeding in our courts.

The Child's demeanor was not consistent with her testimony. When she testified about her many suicide attempts and being in fights among gangs, her demeanor changed. She smiled and laughed. She also did not suffer any injuries of any significance from her multiple, dramatic suicide attempts.

A. Every time I was on drugs, I always tried to commit suicide. I would cut myself. I would throw myself from the top of the house. I would jump from bridges so -- there was always the danger to kill myself. Besides that, because I was hanging out with the people from this gang, I was always on the streets at night. Every time there was a fight between -- among -- the different gangs, I was always in the middle. There were always shootings. There was also fights[,] and I was always right there.

N.T., October 21, 2014, p. 34:3-12.

Cross-examination by Attorney Maurer:

Q. Now, you said that you attempted suicide by jumping off houses and bridges; do you recall that testimony?

A. Yes.

Q. Did you actually jump?

A. Yes.

Q. How many times did you jump off a bridge?

A. Off a bridge, it was about three times.

Q. And how many times off of a house?

A. I don't know, a whole bunch.

Q. And at no time were you ever injured to the point where you needed hospitalization?

A. I would never go to the hospital, but even if I hurt myself, I wouldn't go to a hospital.

Q. Are you suggesting that you may have had broken bones that you didn't bother to go to the hospital for?

A. Not broken.

N.T., October 21, 2014, p. 89:17—p. 90:9.

We also instruct jurors to evaluate the motive of the witness. In this instance, the witness, a Child almost 18 years old, has an economic motive to exaggerate her story. In her initial Petition's closing argument, the Petitioner argued that she should be provided dependency to receive "ongoing educational support and learning English and prenatal care, the therapy that she needs because of the trauma and the drug abuse."

Trial Court Opinion, 12/23/14, at 9-13, and corrected page 9, filed 1/2/15.

As noted above, in her first and third issues, Child claimed that her parents abandoned her resulting in her being without proper parental care or control under 42 Pa.C.S. § 6302. The trial court found these claims unfounded and explained its reasoning as follows:

We have thoroughly discussed the essential elements of this allegation of error. However, we point out it is factually incorrect. The Petitioner states that both a clinician and a caseworker were witnesses from the group housing facility "whose testimony was accepted by stipulation as corroborating the Child's testimony regarding sexual molestation by her mother's boyfriend." This is inaccurate. The testimony of ONE caseworker was the subject of stipulation. Noemary Vega would testify "that the statements that [Child] made on the stand about sexual molestation when she was 11 years old, that she

- 16 -

has made those same statements to Noemary Vega consistently." N.T., October 21, 2014, p. 100:2-5.

The Petitioner also claims that the court erred "by refusing to consider the Child's testimony in making its decision." This allegation is factually incorrect; we considered the testimony. As the Petitioner stated, the Child testified for over two hours, and an examination of the transcript will indicate that the court was attentive, patient, and fair during the entirety of the testimony. We failed to find it convincing, for the reasons stated above; we did not "refuse" to consider it.

[* * *]

While we can understand the Petitioner's disappointment in our decision, and accept with professional dispassion that disappointed litigants will accuse the court of error, we find this particular assignment of error to be troubling and outside the bounds of professional courtesy. The record reflects that the court was more than accommodating to the Petitioner by giving scheduling dates prior to the Child's birthday and by showing the utmost patience during the entirety of the hearing. Not being convinced by the testimony is not the same thing as denying a person the right to testify. Failing to find a witness sufficiently credible should not result in an accusation that a judge violated a rule of due process.

[* * *]

The reason we did not [specify which of Child's allegations were proven by clear and convincing evidence] is because none of the allegations . . . were proven by clear and convincing evidence. The standard of clear and convincing evidence is high. Clear and convincing evidence is evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts at issue." *In the Matter of C.R.S.*, [696 A.2d 840, 843 (Pa. Super. 1997)]; *In re M.B.*, *supra*.

Trial Court Opinion, 12/23/14, at 13-15. We agree with the trial court, and discern no abuse of discretion in the trial court's findings or conclusions.

The trial court continued and analyzed Child's second issue wherein she claimed that the trial court erred in refusing to consider whether she was "ungovernable" pursuant to 42 Pa.C.S. § 6302(6):

> Ungovernability was raised by the Petitioner at the last moment, during the arguments to the court (*See* N.T., October 21, 2014, p. 119). Petitioner alleges that "allegations of ungovernability are waivable by the Child herself through her counsel." This is an interesting assertion, and one for which we could find no supporting law.
>
> In this instance, the Petitioner is the one who gives notice of the issues to be tried, and it is not a question of waiver. OCYS did not raise the issue of ungovernability[;] the Petitioner raised it. We indicated that we might be open to addressing the issue, but for the fact that we were time bound by the Child's impending 18th birthday. This can hardly be error, where we disallow a theory of the case raised in closing arguments by a Petitioner. None of the other parties had warning, nor an opportunity to deal with this allegation.

Trial Court Opinion, 12/23/14, at 15-16. Again, we agree with the trial court and conclude that there was no abuse of discretion in this determination as Child's accusation is not supported by the record.

Next, the trial court disposed of Child's fourth issue in which she baldly averred the trial court failed to enter an order that was best suited to her safety, protection, and welfare pursuant to the Juvenile Act as follows:

> The purposes of the Act are met only by due process and compliance with the provisions of the Act and the Rules of Juvenile Court procedure. To substitute our own feelings about the best interest of a child, without following the provisions of the Act, is clearly contrary to all legal principles. The law requires methodical attention to the rights of all parties, dispassionate evaluation of testimony, and, sometimes, it requires reaching conclusions and results which might leave one regretful that the outcome could not be different. That

- 18 -

"purpose" clause of the Juvenile Act is not a phrase which allows a judge to do unlimited good things for people just because it feels good. A dependency hearing is a two-stage process. In accordance with the overarching purpose of the Juvenile Act "[t]o preserve the unity of the family whenever possible," *see* 42 Pa.C.S.A. § 6301(b)(1), "a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available." *In re R.T.*, [592 A.2d 55, 57 (Pa. Super. 1991)]; *In re A.B.*, *supra*.

The first stage requires the juvenile court to hear evidence on the dependency petition and determine whether the child is dependent pursuant to the standards set forth in section 6302. 42 Pa.C.S.A. § 6341(a). If the court finds clear and convincing evidence that the child is dependent, it may move to the second stage in which it must make an appropriate disposition based upon an inquiry into the best interests of the child. 42 Pa.C.S.A. § 6351(a); *In re B.S.*, 923 A.2d 517, 521 (Pa. Super. 2007).

Trial Court Opinion, 12/23/14, at 16-17. In light of our standard of review as set forth in *In re R.J.T.*, 9 A.3d at 1190, we will not disturb the findings and credibility assessments of the trial court as they are supported by the record, and we discern no abuse of discretion in the trial court's decision.

Finally, the trial court commented on the petition underlying this appeal:

There is one lingering issue which troubles this court. Although not mentioned in the reasons for finding the child "Not Dependent" because it was unnecessary at that time, we are compelled to point out that the child is in the custody and detention of the Department of Health and Human Services, and not free to leave, as claimed by Petitioner. [Counsel for] Petitioner claimed, prior to the testimonial proceeding that he had the permission from the "Office of Refugee Resettlement to hand over physical custody to OCYS." *See* N.T. September 15, 2014, p.13. Even though we accept the representation of counsel, we had no evidence of the authority of said agency to give such permission. This judge has serious concerns whether the Department of Health and Human Services should have been

made a party to the proceeding. At a proceeding prior to the actual hearing (*[s]ee* N.T. September 15, 2014, p.13), [Counsel for] Petitioner claimed he has the agreement of the Federal Government to release the Child to the custody of Lehigh County OCYS, but nothing further was presented to the court. We were not provided with any legal authority as to how a mere state court could simply take custody of a child who is being detained by the federal government. I spend no more time on this issue, because it was not briefed, or argued, and we do not presume to know the answer. But we believe an answer would be important.

Trial Court Opinion, 12/23/14, at 17.

For the reasons set forth above, we discern no abuse of discretion in the trial court's conclusion that Child is not dependent. Accordingly, we affirm the trial court order declining to find Child dependent.

Order affirmed.

Judge Donohue did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/20/2015