J-S47044-14

2014 PA Super 212

| IN THE INTEREST OF: M.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: N.C., MOTHER | No. 899 EDA 2014 |

Appeal from the Order Dated February 18, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No.: CP-51-DP-0000358-2014

BEFORE:  MUNDY, J., OLSON, J., and WECHT, J.

OPINION BY WECHT, J.:                      **FILED SEPTEMBER 26, 2014**

N.C. ("Mother") appeals the February 18, 2014 order that adjudicated her son, M.B. ("Child"), dependent and committed him to the custody of the City of Philadelphia's Department of Human Services ("DHS").  We affirm.

At a dependency hearing held on February 18, 2014, the juvenile court heard testimony that established the following facts.  Child lived with Mother at Mother's home in Philadelphia.  At the time of the dependency hearing, Child was fifteen years old and in the ninth grade.  Notes of Testimony ("N.T."), 2/18/2014, at 3, 6.  Child graduated at the top of his eighth grade class and earned a scholarship to a private school.  *Id.* at 20.  Although Child has exhibited a set of specific needs, he does not have an Individualized Education Plan.  *Id.* at 11.  Mother placed Child at the Horsham Clinic in 2011 because he had been threatening people at school.  *Id.* at 18-19.  Mother initially placed Child in Horsham's outpatient program,

during which he was transported from home to the Clinic each day. ***Id.*** at 18. Child was moved to Horsham's inpatient program for three months after he came home one day and set a fire in Mother's apartment. ***Id.*** at 18-19. Child had set other fires. Once, while Child's stepfather was asleep, Child entered the kitchen, set fire to a pencil, threw the pencil in the trash, and walked out the door as the trashcan began to burn. Child's stepfather awoke to find the kitchen on fire. ***Id.*** at 19.

Mother told DHS social worker Aliya Williams that, following Child's discharge from Horsham, she had a discussion with Child's primary care provider about referrals for therapy but did not receive any recommendations. ***Id.*** at 4-5. Child was diagnosed with bi-polar disorder and ADHD, and was prescribed Risperdal and Concerta. ***Id.*** at 22. Child refused to attend therapy sessions and refused to take his medications after his release from Horsham. ***Id.*** at 4, 14. Mother testified that she occasionally would force Child to take his medicine. ***Id.*** at 21. Other times, he would "act like he took it, and then spit it out." ***Id.*** at 22. Mother said that she took Child to see his family physician every three months, and that Child was in therapy at one point but was uncooperative. ***Id.*** at 21, 24. Mother testified that she has not enrolled Child in any mental health treatment since he left Horsham in 2011. ***Id.*** at 23.

In November 2013, when Child was fourteen years old, he was involved in a disagreement with Mother and said that he was afraid to return home. According to Child, he failed to complete some chores, and believed

that Mother would discipline him severely. In order to defuse the tension between Mother and Child, Child stayed with his grandmother before returning to Mother's home. *Id.* at 4.

DHS requested an order of protective custody for Child on February 7, 2014. DHS alleged that Child had reported on several occasions that he was afraid to go home to Mother. DHS also alleged that Mother used verbal and physical discipline when Child failed to follow her rules; that Child appeared to have untreated mental health issues; and that Mother was unable to control Child. Application for Order of Protective Custody, 2/7/2014. Social Worker Williams testified that both Mother and Child requested that Child be removed from Mother's home because they could no longer manage their relationship. N.T. at 5.

Mother explained to DHS that, although the two have not had a physical altercation, Child has made movements that Mother perceived as physically threatening. *Id.* at 5-6. Mother stated that Child also comes and goes as he pleases and seems as though he is "two different people." *Id.* at 6. Mother testified that she fears being at home with Child, who, Mother says, will set a fire or destroy furniture in the home if he does not get his way. *Id.* at 17-18. Mother also testified that she does not sleep when Child is in her home. *Id.* at 18. DHS removed Child from Mother's home on February 7, 2014, and placed him in a treatment foster home. *Id.* at 3, 5.

The juvenile court held a hearing on the dependency petition on February 18, 2014. DHS social worker Aliya Williams and Mother testified at

the hearing. The parties agreed that Child was a dependent child and also agreed upon Child's placement. However, there was no agreement as to the basis for the adjudication of dependency. N.T. at 3. DHS argued that Child was dependent upon the bases that Child lacked proper parental care and control and that Child was incorrigible. *Id.* at 16-17. Mother's counsel argued that Child was dependent based solely upon his own incorrigibility. *Id.* at 26-28. The juvenile court found that Child was dependent upon both bases. *Id.* at 31.

The juvenile court entered its order adjudicating Child dependent and committing him to DHS on February 18, 2014. On March 19, 2014, Mother filed her notice of appeal and statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Mother presents the following questions for our review:

1. Whether the trial court erred in adjudicating the subject minor dependent under 42 Pa.C.S.A. § 6302(1) and finding that said minor lacked proper parental care and control proven by clear and convincing evidence.

2. Whether the trial court erred by not specifying, as required by rules 1408 and 1409 of the PA Rules of Juvenile Court Procedure, which specific averments in the petition were proved by clear and convincing evidence (Rule 1408) and by failing to include in the Order adjudicating the subject minor dependent, under 42 Pa.C.S.A. § 6302(1), the specific factual findings upon which the court's decision was based (Rule 1409(C)(1)(a), (b)).

Mother's Brief at 4 (minor modifications to citations, order of issues reversed for ease of disposition).

Our Supreme Court set forth our standard of review for dependency cases as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

We note at the outset that no party has appealed the juvenile court's determination that Child is dependent based upon incorrigibility. However, Mother's appeal of the finding that Child is dependent based upon lack of proper parental care and control is not moot.

As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. . . . An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect. . . . Nevertheless, this Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) *a party to the controversy will suffer some detriment due to the decision of the trial court*.

*In re D.A.*, 801 A.2d 614, 616 (Pa. Super. 2002) (citations omitted, emphasis added). In prior cases, we have held that, because there can be collateral consequences to a finding of dependency, it is excepted from the mootness doctrine. **See In re L.Z.**, 91 A.3d 208, 213 (Pa. Super. 2014) (reaching merits of challenge to finding that mother perpetrated child abuse

- 5 -

despite the mother's parental rights being terminated); *In re D.A.*, 801 A.2d 614, 617 (Pa. Super. 2002) (holding case not moot even though dependency resolved during pendency of appeal because mother could suffer a detriment in future dealing with child protective agency). Here, because Mother would suffer a detriment in future dealings with DHS or in other proceedings regarding Child due to the finding of lack of proper parental care or control, the issue is not moot.

A dependency hearing is a two-stage process. The first stage requires the juvenile court to hear evidence on the dependency petition and determine whether the child is dependent pursuant to the standards set forth in section 6302. 42 Pa.C.S.A. § 6341(a). If the court finds clear and convincing evidence that the child is dependent, it may move to the second stage, in which it must make an appropriate disposition based upon an inquiry into the best interests of the child. 42 Pa.C.S.A. § 6351(a); *In re B.S.*, 923 A.2d 517, 521 (Pa. Super. 2007). Clear and convincing evidence is evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts at issue." *In the Matter of C.R.S.*, 696 A.2d 840, 843 (Pa. Super. 1997).

To adjudicate a child dependent based upon lack of parental care or control, a juvenile court must determine that the child:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A

determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

42 Pa.C.S.A. § 6302(1).

In accordance with the overarching purpose of the Juvenile Act "to preserve family unity wherever possible," *see* 42 Pa.C.S.A. § 6301(b), a child will be declared dependent only when he is presently without proper parental care or control, and when such care and control are not immediately available. *In the Interest of R.T.*, 592 A.2d 55, 57 (Pa. Super. 1991). This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *C.R.S.*, 696 A.2d at 845.

Mother contends that the juvenile court erred in determining that Child was without proper parental care and control pursuant to section 6302. Mother argues that the facts supported only the incorrigibility finding. Mother's Brief at 15-17.

The juvenile court found, and the record supports, that Child has "particular needs related to his mental health." Juvenile Court Opinion, 4/25/2014, at 3. Child was prescribed medication for his mental health conditions, but Mother was unable to ensure that Child took the medication as prescribed. After a three-month in-patient stay at a mental health facility, Mother did not take Child to a specialist or mental health

professional for follow-up care. *Id.* While Child is now at an age at which he must consent to care, the record does not demonstrate that Mother has made any attempts to provide Child with any care designed to treat his mental health conditions. Further, Mother admitted to the social worker that she cannot manage Child, that she is afraid of Child, and that she does not sleep while Child is in the house. N.T. at 5, 17-18. Mother testified that Child "will set a fire in the house. He will destroy furniture." *Id.* at 18.

These specific findings, in addition to the factual recitation above, suffice to support the trial court's determination that clear and convincing evidence established that Child is not receiving proper parental care that is geared toward his mental health needs and is likely to prevent serious injury to Child. *See C.R.S.*, *supra*. While Mother can no longer force Child to enter treatment, Mother did not do so before Child reached the age of consent and has not attempted to do so since. Mother admits that Child starts fires that put Child at risk of serious injury, yet Mother has not sought treatment for Child to address these concerns. Further, Child is without proper parental control as Mother admitted to the social worker that she is unable to manage Child. Based upon this record, the juvenile court did not abuse its discretion in finding that Child was dependent based upon a lack of proper parental care and control and that such care is not immediately available.

Mother also contends that the juvenile court erred in failing to comply with the rules of juvenile court procedure. Specifically, Mother argues that

the court did not specify which allegations were the bases for the dependency adjudication as required by Rule 1408. Mother also asserts that the juvenile court did not specify that the court found Child dependent by clear and convincing evidence or include specific factual findings. Mother's Brief at 13-15.

Rule 1408 provides as follows:

> After hearing the evidence on the petition or accepting stipulated facts by the parties but no later than seven days, the court shall enter a finding by specifying which, if any, allegations in the petition were proved by clear and convincing evidence.

Pa.R.J.C.P. 1408. In pertinent part, Rule 1409 provides that:

> The court shall include the following in its court order:
>
> > (1) A statement pursuant to paragraph (A):
> >
> > > (a) as to whether the court finds the child to be dependent from clear and convincing evidence;
> > >
> > > (b) including the specific factual findings that form the bases of the court's decision; . . . .

Pa.R.J.C.P. 1409(C).

In its February 18, 2014 order, the juvenile court stated that it adjudicated Child dependent based upon clear and convincing evidence. Order, 2/18/2014, at 1. As to the findings of fact, the juvenile court stated that it found the facts to be as stated in the dependency petition, and that these facts sufficed to adjudicate Child dependent. *Id.* The dependency petition set forth, among others, the following allegations: that Child had a mental health condition; that Child had started fires in Mother's home; that

- 9 -

Child was not receiving treatment for his mental health condition; that Mother felt unsafe around Child; that Mother requested an out-of-home placement for Child; and that a Child and Adolescent Needs and Strengths assessment of Child recommended placement in treatment foster care. Dependency Petition, 2/11/2014, at 7-8 (unnumbered). These allegations, once proven by clear and convincing evidence, demonstrated that Child has particularized mental health needs that Mother did not meet such that he was without proper parental care and control and that such care was not immediately available. While a more detailed set of findings would have been preferable, the court's order complied with rules 1408 and 1409(C) and provided a sufficient basis for the dependency adjudication.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2014