J-A30022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KRESS BROTHERS BUILDERS L.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICIA L. WILLIAMS, DALE HILL, | : | |
| AND JACQUELINE WILLIAMS, | : | |
| | : | No. 526 WDA 2018 |
| Appellants. | : | |

Appeal from the Judgment Entered, May 7, 2018
in the Court of Common Pleas of Allegheny County,
Civil Division at No(s):  G.D. 15-010117.

BEFORE:   SHOGAN, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED FEBRUARY 28, 2019**

Three sisters, – Patricia L. Williams, Dale Hill, and Jacqueline Williams – who owned property in Allegheny County, appeal from a trial court's judgment directing them to pay $12,239.14 to Kress Brothers Builders L.P. ("Contractor").  The Contractor filed a mechanic's lien against the Owners' property[1] and also brought claims for *quantum meruit* and unjust enrichment.  As the verdict is supportable by any one of Contractor's theories of recovery, and as the Owners did not properly appeal the verdicts against them on the latter two claims, we affirm.

---

[1] After this action commenced, the Owners sold the property in question.  A significant portion of the sales price now sits in escrow pending resolution of this case.  ***See*** Contractor's Brief at 5.

---

*   Retired Senior Judge assigned to the Superior Court.

The relevant facts of this matter date back to 2007, when the Owners made a "family agreement" with their stepfather, George Saddler, at their mother's funeral. N.T., 3/6/18, at 87. As the trial court explained, the Owners:

> are the daughters of Limmey Sue Saddler, who owned and resided in the home since 1984. In 1986 or 1987, mother married George Saddler and he then resided there with her. The four were owners in fee during most of that time, until [mother] passed away in May of 2007.

Trial Court Opinion, 6/6/18, at 1 (citations to record omitted).

Under the "family agreement," Mr. Saddler could continue residing in that home for as long as he desired, provided he paid all property taxes and utilities while living there. The family members never signed any documentation or recorded anything with the Allegheny County Department of Real Estate to evidence this arrangement.

Mr. Saddler continued living in the house under the "family agreement." *Id.* In addition to paying for taxes and utilities, Mr. Saddler also maintained a homeowner's-insurance policy for the house. The Owners were unaware of that policy. They never returned to the property during their stepfather's life, and, despite admitting that repair costs would still be their responsibility, they paid nothing for the house's upkeep.

In January 2014, Mr. Saddler reported a broken pipe that had severely damaged the house's bathroom and kitchen to his insurance company. The insurer accepted coverage and contacted the Contractor to do the repairs. Mr. Saddler did not apprise the Owners of this situation.

- 2 -

The insurance company believed Mr. Saddler was the owner of the property and told this to the Contractor. Thus, the Contractor fixed the home under the impression that Mr. Saddler owned it. The restorations concluded by May 19, 2014 and returned the home to a saleable condition. The insurer paid the repair costs in two checks, one for $11,989.14, payable to Mr. Saddler, and a second check for recoverable depreciation in the amount of $3,483.49, payable to both Mr. Saddler and the Contractor. *See* Trial Court Opinion, 6/6/18, at 2.

The Contractor received only the second check. Thus, it sent an invoice to Mr. Saddler for $12,239.14 dated May 19, 2014, which has not been paid to this day.[2]

Mr. Saddler died in the spring of 2015 without paying the bill.

Because the Contractor was still awaiting full payment, it decided to file a mechanic's lien against the property. Upon looking through the county's real estate indices, it learned that the three sisters – and not Mr. Saddler – were the true owners. So the Contractor filed a lien on June 11, 2015 and a complaint to reduce that lien to a judgment against the Owners. The Contractor later added counts for *quantum meruit* and unjust enrichment in an amended complaint.

---

[2] The amount of $12,239.14 is slightly higher than the check the insurance company sent, but the Contractor never received. The difference reflects the amount of Mr. Saddler's deductible under the insurance policy.

A bench trial occurred on March 6, 2018.  Upon the close of Contractor's case, the Owners moved for judgment as a matter of law – i.e., a compulsory nonsuit.  ***See id.*** at 106.  The trial court denied the motion without argument.  The exchange went as follows:

> **MR. PAPER:**  Your Honor, I'm asking for a compulsory nonsuit.  I want to give you some reasons.
>
> **THE COURT:**  All right.  It's denied.
>
> **MR. PAPER:**  All right.
>
> **THE COURT:**  Okay.
>
> **MR. PAPER:**  Thank you.
>
> **THE COURT:**  All right.  Wait, I'll get you some envelopes to receive the verdict.  Okay.  Get your exhibits out of here.  You'll get a notice in the mail.
>
> (Whereupon, the proceedings were concluded.)

N.T., 6/6/18, at 106.  No objections appear of record.

A few days later, the trial judge delivered his non-jury decision in the amount of $12,239.14 in favor of the Contractor on all three claims.  The Owners then filed post-trial motions, which the trial court denied.  This timely appeal followed.

The Owners raise four issues, which we have reordered for purposes of disposition, in their appellate brief.  They are:

> 1.  Did the trial court commit reversible error by entering a nonjury verdict in favor of contractor where the Owners were not a party to any agreement with contractor, as required to sustain a claim for *quantum meruit* or unjust enrichment?

- 4 -

2.      Did the trial court commit reversible error by entering a nonjury verdict in favor of the Contractor without even allowing the Owners to present their motion for nonsuit or their case-in-chief?

3.      Did the trial court lack subject-matter jurisdiction over Contractor's mechanic's lien claim on the basis of Contractor's failure to comply strictly with the mechanic's lien statute's requirement that a mechanic's lien be filed within six (6) months after completion of the work, when contractor, in fact, filed its mechanic's lien thirteen (13) months after completion of the work?

4.      Did the trial court commit reversible error by not entering a verdict in favor of the Owners on the basis that Contractor's mechanic's lien claim is barred pursuant to 49 P.S. § 1303(d), which prohibits a tenant from incurring a mechanic's lien against an Owners' property when Owners did not give written consent for the contractor's work?

*See* Owners' Brief at 4.

We will address only the first and second issues, because our resolution of them renders the Owners' two claims regarding Pennsylvania's Mechanic's Lien Law (MLL)[3] moot.

## A.      The *Quantum Meruit* and Unjust Enrichment Claims

In their first appellate issue, the Owners challenge the trial court's decision, relative to the counts of *quantum meruit* and unjust enrichment. They argue that these claims cannot be sustained because both require that the contract to perform must be made between the Contractor and themselves as Owners. *See* Owners' Brief at 23. Because they were not a party to any

---

[3] 49 P.S. § 1101 *et seq*.

agreement and they were unaware of the work, the Owners claim they cannot be forced to pay for it. *See id*. at 24.

Initially, we observe that this issue was not specifically set forth in the Owners' Concise Statement of Matters Complained of on Appeal, which the trial judge directed them to file pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). The mandates of Rule 1925(b) are very strict, and a party's failure to comply fully is generally fatal. "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). In applying this Rule, the Supreme Court of Pennsylvania has unequivocally held "from this date forward, in order to preserve their claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1999).

Turning to the Owners' 1925(b) statement, we note that it contains five issues. The first and fifth issues directly correlate to what we have listed above as the third and fourth issues in the Owners' appellate brief. And the 1925(b) statement's second and third issues correspond with what we listed above as the second issue in the Owners' appellate brief. The remaining issue in the 1925(b) statement is as follows:

> 4. The trial court committed an error of law and/or abused its discretion by entering a verdict in favor of the [Contractor] where [the Contractor] failed to prove that [the

- 6 -

Owners] had knowledge that their tenant, with whom [the Contractor] entered into a contract for work, may have portrayed himself as the owner of the subject property.

Owners' Concise Statement at 2.

However, the issue as stated in the Owners' appellate brief is:

[1].[4] Did the trial court commit reversible error by entering a nonjury verdict in favor of contractor where the [Owners] were not a party to any agreement with contractor, as required to sustain a claim for *quantum meruit* or unjust enrichment?

Owners' Brief at 4.

Whether the Contractor failed to prove that the Owners knew Mr. Saddler entered an agreement portraying himself as an owner is an entirely different question from whether the Owners themselves entered into an agreement with the Contractor. The claims of *quantum meruit* and unjust enrichment could arguably relate to the issue appearing in the 1925(b) statement, but the issue that Owners raised in their appellate brief – i.e., whether they had an agreement with the Contractor – relates to a breach-of-contract claim. The Contractor never asserted breach of contract as a theory of recovery. Thus, the 1925(b) statement and the Owners' appellate brief present distinct grounds of alleged error.

Accordingly, we conclude that the *quantum-meruit*/unjust-enrichment issue, as phrased in the Owners' brief, does not match the fourth issue they

_____

[4] Again, this issue appears in the brief as the fourth issue, but we have reordered it as the first issue here for ease of disposition.

raised in their 1925(b) Statement.  As such, the Owners have raised a new issue, for the first time on appeal, which they may not do.

The Owners have therefore waived their appellate issue regarding the Contractor's *quantum meruit* and unjust enrichment claims.  Thus, we may affirm the trial court's decision on these claims alone.

### B.    The Procedural Claims

In their second appellate issue, the Owners allege several procedural errors.  They claim that the court of common pleas committed reversible error by denying their motion for compulsory nonsuit before they even presented arguments on the motion.  They also contend that, by proceeding directly from the Contractor's case-in-chief to verdict, without giving the Owners an opportunity to mount a full defense, the trial court violated Pennsylvania Rule of Appellate Procedure 224.  Additionally, the Owners cite Rule 2.2 of the Pennsylvania Code of Judicial Conduct.  "A judge shall uphold and apply the law, and shall perform all duties of official office fairly and impartially."  Pa. C.J.C. 2.2.  They claim that the judge's actions warrant a reversal of the non-jury decision in favor of the Contractor.  Owner's Brief at 16.

The Contractor responds that the Owners have waived their procedural claims.  *See* Contractor's Brief at 14-16.

The Owners' claims of procedural error by the trial judge warrant no relief.  First, we note that, with respect to the judicial conduct claim, whether the trial judge violated Rule 2.2 is beyond the purview of this Court.  Such

matters are within the province of the Judicial Conduct Board and the Court of Judicial Discipline. Accordingly, we express no opinion upon Pa. C.J.C. 2.2.

With respect to the other procedural claims, as explained above, in order to preserve issues for appellate review, a party must raise those issues before the trial is concluded; raising them for the first time in post-trial motions is insufficient. *See* Pa.R.Civ.P. 227.1(b)(1) and Pa.R.A.P. 302.

The Owners' Motion for Post-Trial Relief provided:

> At the trial on March 6, 2018 . . . the [trial judge] left the bench and walked out of the courtroom after [the Contractor's] case-in-chief without allowing [Owners'] case to proceed. This was highly prejudicial to [Owners] and should be deemed a mistrial which requires the grant of a new trial.

Owners' Motion for Post-Trial Relief at 1.

However, the record clearly reflects that Owners failed to object to the trial judge closing court at the close of the Contractor's case-in-chief. As previously related, the trial ended as follows:

**MR. PAPER:** Your Honor, I'm asking for a compulsory nonsuit. I want to give you some reasons.

**THE COURT:** All right. It's denied.

**MR. PAPER:** All right.

**THE COURT:** Okay.

**MR. PAPER:** Thank you.

**THE COURT:** All right. Wait, I'll get you some envelopes to receive the verdict. Okay. Get your exhibits out of here. You'll get a notice in the mail.

(Whereupon, the proceedings were concluded.)

N.T., 6/6/18, at 106.

Instead of objecting to the trial judge's refusal to hear their arguments on their motion for nonsuit, the Owners acquiesced to the decision. In fact, they thanked the court. This would have been the appropriate time to object on procedural grounds – i.e., assert a Due Process violation[5] – or, at the very least, inform the trial judge that the Owners wished to proceed with a case-in-chief.

Regarding this issue, the trial judge opined:

> the transcript does not reveal that defense counsel at any time announced that he wanted to call a witness. He appeared in court with only one of the three Owners . . . He provided no witnesses to contest the unjust enrichment and *quantum meruit* claims that [the Contractor] pled and provided witness to support at trial.

Trial Court Opinion, 6/6/18, at 5. Also, we note that the Owners' only witness was Patricia Williams, whom the Contactor called during its case-in-chief, and whom the Owners' counsel cross-examined. **See** Contractor's Brief at 15. Apparently, the trial judge believed all of the testimony was concluded, as all of the witnesses who were present in the courtroom had testified.

_____

[5] We recognize that in this issue the Owner's attempt to claim that their due process rights were violated. However, nothing contained in their 1925(b) statement or their statement of issues on appeal even hints that they are claiming a due process violation. The Owners did not allege at trial that the court violated their Due Process rights. Additionally, the Owners did not develop this argument on appeal. In fact, the first and only mention of "Due Process" appears in passing in the Owners' Reply Brief at page 12. Because it was not properly raised, we may not consider the merits of a due process claim. **See** Pa. R.A.P. 1925(b)(4)(vii); Pa. R.A.P. 302(a).

If the Owners wanted to state an argument on the record or call additional witnesses in their case in chief, they needed to speak up at trial, and not wait to claim error in post-trial motions. After the trial is over, the court can no longer correct the alleged error. Because the Owners did not timely raise their procedural claims of error, this Court may not address the merits of these allegations for the first time on appeal. *See* Pa.R.A.P. 302.

Therefore, we dismiss the Owners' second appellate issue as waived.[6]

## C. The Mechanics Lien Claims

The Owners' last two appellate issues attack the trial court's application of Sections 1502[7] and 1303(d)[8] of the MLL, respectively. The Owners argue

---

[6] We also note that the Owners did not request the appropriate relief, i.e. remand for a new trial.

[7] Section 1502 of the MLL provides, in relevant part:

> **(a) Perfection of Lien.** To perfect a lien, every claimant must:
>
> > (1) file a claim with the prothonotary as provided by this act within six (6) months after the completion of his work . . . .

49 P.S. § 1502.

[8] Section 1303(d) of the MLL is as follows:

> **(d) Leasehold premise.** No lien shall be allowed against the estate of an owner in fee by reason of any consent given by such owner to a tenant to improve the leased premises, unless it shall appear in writing signed by such owner that

that because the Contractor did not timely file the underlying mechanic's lien, section 1502 deprived the trial court of subject-matter jurisdiction. They also contend that Section 1303(d) barred the Contractor's mechanic's lien claim, because Mr. Saddler was their tenant and the trial court erred when it "refused to acknowledge that leases can be oral." Owners' Brief at 18.

"As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot." *In re M.B.*, 101 A.3d 124, 127 (Pa. Super. 2014), *quoting In re D.A.*, 801 A.2d 614, 616 (Pa. Super. 2002). With respect to the Owners remaining two appellate issues, even if they were to succeed on the merits of either one, this Court would be unable to grant them any appellate relief. In other words, because in this decision, we are affirming the judgment on the *quantum meruit* and unjust enrichment claims, any defect in the mechanic's lien claim is now moot.

It makes no difference whether the trial court had jurisdiction over the mechanic's lien claim or whether Mr. Saddler was a tenant, because the trial court's decision on the other counts would still stand. Thus, we dismiss the Owners' claims regarding the mechanic's lien as moot.

Judgment affirmed.

---

the erection, construction, alteration, or repair was in fact
for the immediate use and benefit of the owner.

49 P.S. § 1303(d).

Judge Shogan concurs in the result.

Judge Strassburger concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2019