J-S41003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.V.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.S.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 728 WDA 2023 |

Appeal from the Order Entered June 2, 2023
In the Court of Common Pleas of Venango County
Civil Division at No(s):  CP-61-DP-0000029-2023

| | | |
|---|---|---|
| IN RE: K.S.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.S.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 729 WDA 2023 |

Appeal from the Order Entered June 2, 2023
In the Court of Common Pleas of Venango County
Civil Division at No(s):  CP-61-DP-0000030-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: K.S.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.S.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 730 WDA 2023 |

Appeal from the Order Dated June 2, 2020
In the Court of Common Pleas of Venango County
Civil Division at No(s):  DP-No. 31-2023

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.*

MEMORANDUM BY PANELLA, P.J.:                **FILED: December 28, 2023**

N.S.W. ("Mother") appeals from the orders of adjudication and disposition entered in the Venango County Court of Common Pleas on June 2, 2023, that found her three sons, K.V.T., born in November 2016, K.S.T., born in January 2021, and K.T., born in April 2023 (collectively, "the Children") dependent.[1]  We affirm.

On May 12, 2023, CYS filed dependency petitions pursuant to the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6365, with respect to K.V.T., then six years old, and K.T., then two weeks old. CYS alleged the children were dependent since both Mother and K.T. had tested positive for methamphetamines at K.T.'s birth.[2]  Further, CYS alleged that Mother had failed to comply with a family plan that CYS had proposed. Finally, CYS noted that the Children had already been removed from Mother's care and placed with Mother's parents. Since it is relevant to our disposition, we note that there is no dispute that the May 12, 2023 dependency petitions did not name Mother's middle child, two-year-old K.S.T. Nonetheless, on May 25, 2023, the court held an adjudicatory

---

* Former Justice specially assigned to the Superior Court.

[1] The two younger children share the same initials. To improve clarity this memorandum will refer to the youngest child as "K.T."

[2] Mother does not dispute that the Children's father committed suicide in December 2022. **See** Motion for Reconsideration, filed 6/2/2023, at ¶ 3.

hearing concerning allegations of dependency with respect to all of the Children.

Therein, CYS presented the testimony of Marci Harkless, crisis investigation specialist for the Venango County Protective Intake Crisis Unit, and Tracy Madden, maternal grandmother. Mother was represented by counsel and testified on her own behalf. The Children were represented at the hearing by a guardian *ad litem* ("GAL").

By orders of adjudication and disposition dated May 25, 2023, and entered June 2, 2023, the court adjudicated the Children dependent pursuant to 42 Pa.C.S.A. § 6302, found that allowing the Children to remain in Mother's home would be contrary to their welfare, and directed legal and physical custody of the Children to remain with CYS. On June 2, 2023, CYS filed a dependency petition for Mother's middle child, K.S.T.

Mother filed a motion for reconsideration on June 2, 2023, averring, *inter alia*, that she was unaware that a petition had not been filed with respect to her middle child until June 2, 2023, *i.e.*, the same day that the petition was filed and granted by the trial court. By order entered July 5, 2023, the court denied Mother's motion for reconsideration.

Mother timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*. The trial court filed a Rule 1925(a)(2)(ii) opinion on August 3, 2023.

On appeal, Mother raises the following issues for review:[3]

1. Whether the trial court erred in finding Children dependent?

2. Whether the trial court erred by failing to enter findings of what allegations, if any, were proved by clear and convincing evidence under Pa.R.J.C.P. 1408?

3. Whether the trial court erred in conducting a hearing on CYS' petition for dependency on May 25, 2023, when CYS had failed to file a petition for dependency until June 2, 2023?

*See* Mother's Brief at 8.[4]

We apply a mixed standard of review for dependency cases:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (internal citation omitted).

To justify finding Children dependent, the trial court was required to find that they were

> without proper parental care or control, subsistence, education as required by law, or other care or control

---

[3] Despite this Court's consolidation of these appeals, Mother submitted a separate brief for each one. Other than her final issue, her arguments are essentially the same for each child. Mother only included her final issue with regard to her middle child, K.S.T. Hereafter, any citation to Mother's brief is citing to the brief filed for her middle child, docketed in this Court at 729 WDA 2023.

[4] We note that the GAL joined in Mother's briefs wherein she advocates for vacating the dependency orders. For the reasons discussed *infra*, we do not disturb the orders.

necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

42 Pa.C.S.A. § 6302(1). Proper parental care is care that "(1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In re M.B.*, 101 A.3d 124, 127-128 (Pa. Super. 2014). However, the court must always keep in mind that the dominant purpose of the Juvenile Act is to preserve family unity whenever possible. *See id.* at 127.

Clear and convincing evidence is evidence that is "so direct and unambiguous as to enable the trier of fact to come to a sure determination, without conjecture, of the truth of the exact facts at issue." *In the Matter of C.R.S.*, 696 A.2d 840, 845 (Pa. Super. 1997). Moreover, "a finding of dependency can be made on the basis of prognostic evidence and such evidence is sufficient to meet the strict burden of proof necessary to declare a child dependent." *In re R.W.J.,* 826 A.2d 10, 14 (Pa. Super. 2003).

In her first issue, Mother argues that CYS did not present clear and convincing evidence that the Children were dependent pursuant to 42 Pa.C.S.A. § 6302. *See* Mother's Brief at 11. Specifically, Mother argues that CYS did not provide any evidence that K.V.T. and K.S.T., the older children, were unsafe while in her custody. *See id.* at 18. As best we can discern, Mother appears to utilize this argument to posit that the youngest child, who

tested positive for methamphetamine at birth, would also be safe in her care. *See id.* at 18-19. She also contends that CYS did not meet its evidentiary burden because the trial court stated on the record in open court that "[t]here is an arguable issue with regard to the two older kids. Although, I think there is enough evidence that could support a ruling either way." *Id.* at 19 (citing N.T., 5/25/2023, at 64).

Despite the statement by the trial court emphasized by Mother, the court expressed its ultimate conclusion by asking, "[d]oes anybody really believe that her two older sons who cannot fend for themselves at age [two] and [six] were not at risk also, especially when no other adult is present to care for them when [Mother] is using?" Trial Court Opinion, 8/3/2023, at 7 (unpaginated).

We conclude that the record supports the trial court's factual finding that Mother is clearly addicted to methamphetamine and unlikely to remedy this addiction on her own:

> While it is undisputed that [Mother] is a good parent when not under the influence of a controlled substance and that the two older boys [] were in good health when [CYS] intervened in early May, the record also clearly establishes that her underlying drug addiction and mental health issues had not been fully treated by the day of the adjudication hearing and that she has a repeating history of relapses. [Mother], to her credit, underwent a dual mental health and drug and alcohol assessment May 18, 2023 prior to the adjudication hearing, and began taking Prozac for her depression and started outpatient counseling for both problems. However, testimony from [maternal grandmother], and [Mother] herself, depicted a period of on again/off again drug abuse history for roughly one and a half years for which [she] had not received any substantial treatment.

- 6 -

[Mother] admitted in her testimony that she smoked [methamphetamine] on April 23rd and April 25th while pregnant with K.T., but claimed that the two older boys were with their paternal grandmother for [three] days when she used. (April 23rd was a Sunday and April 25th was a Tuesday). She testified that she took [methamphetamine] because she was depressed and needed to be on medicine and just needed to be happy for a while. She claimed that she does not use [methamphetamine] at home or when the [Children] are around, nor does she take the [Children] to where she uses. [Methamphetamine] is her drug of choice which she began using [two] years ago, and until now has not had any treatment. At the beginning, she had been using [methamphetamine] for [eight or nine] months when she overdosed on August 15, 2022 from an injection of heroin and fentanyl that she claims was involuntary, requiring emergency medical treatment and a lift flight to Pittsburgh.

Trial Court Opinion, 8/3/2023, at 6-7 (unpaginated; citations omitted). The court further explained its conclusion that Mother was currently incapable of providing proper parental support:

This court's ruling of dependency on the two older boys is based upon circumstantial evidence wherein the court drew inferences from the factual testimony of all three witnesses, determined its weight and credibility and drew inferences from that evidence and found that [Mother's] drug problem was significant and that she was still in denial at the hearing even though she began taking the proper steps to assess and treat both problems.

Furthermore, the court's finding that [the Children] were still at risk of harm from [Mother] is bolstered from testimony received from [maternal grandmother] as well as Marci Harkless. [Mother has a] long history of addiction that has gone untreated for years, even in the aftermath of her overdose and the suicide death of the [C]hildren's father in December of 2022. In addition, her lack of treatment for depression only added fuel to her desire to feel happy as she described with the use of [methamphetamine]. **Her current treatment for both is necessary but the court was not persuaded that it would continue without court intervention and monitoring, all of which would lead to a relapse and danger to [the Children].** In short, the court

- 7 -

placed little weight on [Mother's] promise to quit using [methamphetamine] on her own, and knows from its own experience that an addict with that mindset is doomed to relapse.

*Id.* at 8-9 (unpaginated) (emphasis added). The record amply supports these findings.

To begin, Mother stipulated that she used methamphetamine on April 23rd and 25th of 2023, only days prior to the birth of K.T. *See* N.T., 5/25/2023, at 4. Mother explained her use as follows.

Q: Can you tell [the court] why you used meth on April 23rd and April 25th?

A: Yes. I've been -- I knew I needed to get on medicine for depression because this has just been hard. It's not a reason for me to be using meth. It was a right now feeling of goodness is what it was supposed to be and it wasn't that. I didn't even feel good after that. I felt like crap. This is meth, I get that. It's just because I was depressed.

*Id.* at 47. Mother further explained that she used methamphetamine instead of another drug "[b]ecause it makes you feel better and I don't like downers. It's not -- I don't like drugs that make me not know what I'm doing or feeling like down. I didn't want to feel down. Meth makes you happy." *Id.* at 61-62. Mother also confirmed that she started using methamphetamine approximately one year and one-half to two years prior to the hearing. *See id.* at 62. Despite acknowledging her methamphetamine use and her feelings of depression, Mother did not seek treatment and testified as follows on inquiry by the court:

Q: And you've not had any treatment[]?

A: No.

Q: Is it a problem?

A: No.

Q: You can quit anytime you want?

A: Yes. Well, the last time I did it I didn't even feel that I wanted to. I won't decide to do it now. Honestly, I don't. It's not worth losing my kids over and I don't ever want to go through this again.

*Id.* at 63. The trial court did not credit Mother's statement that she could quit at any time. *See* Trial Court Opinion, 8/3/2023, at 7 (unpaginated).

In addition, the Children's maternal grandmother testified that Mother's issues with drugs have been ongoing for six years stating that "she's gotten clean and then she goes back to it, and I'm afraid that [the Children] will be around that." N.T., 5/25/2023, at 34. The maternal grandmother posited that without court supervision, "[Mother will] just go right back to it as soon as she's not under the microscope." *Id.* Finally, Marci Harkless, crisis investigation specialist, testified that methamphetamine users "are unable to think clearly, unable to be rational -- make rational decisions -- and that impacts the children that are being cared for." *Id.* at 12-13.

Therefore, the trial court was presented with clear and convincing evidence that Mother had consumed methamphetamine for at least one and one-half to two years, was suffering from depression, and had not sought treatment for these issues. Indeed, Mother chose methamphetamine instead of professional help in an attempt to resolve her mental health issues.

Although Mother began to utilize appropriate modes of treatment once the Children were removed from her care, the court credited the testimony that Mother would not obtain drug treatment on her own and would relapse. Further, the court's inference that Mother's two older children lacked proper parental care is not an abuse of discretion. *See In re R.W.J.,* 826 A.2d at 14 (concluding, "a finding of dependency can be made on prognostic evidence."). Mother's addiction to methamphetamines is a proper basis for being concerned about her ability to parent any of her children appropriately. Accordingly, Mother's first issue on appeal merits no relief.

In Mother's second issue, she argues that the court erred pursuant to Pa.R.J.C.P. 1408 when it failed to enter findings of what allegations CYS proved by clear and convincing evidence. *See* Mother's Brief at 11. Rule 1408 provides as follows.

> **Rule 1408. Findings on Petition**
>
> The court shall enter findings, within seven days of hearing the evidence on the petition or accepting stipulated facts by the parties:
>
>> (1) by specifying which, if any, allegations in the petition were proved by clear and convincing evidence; and
>>
>> . . .

Pa.R.J.C.P. 1408.

Mother argues that the trial court made no findings of fact following the adjudicatory hearing. *See* Mother's Brief at 20. Contrary to Mother's

argument, we note that, at the close of evidence, the court concluded the following on the record in open court:

> So, I think the prudent thing to do is to find that [the Children] are dependent to give [Mother] an opportunity [] to work these programs. Apparently, there has been -- at least in the last year and a half to two years it looks like [] you've had a problem with the use of meth. Whether the overdose you had in August [2022] was voluntary or not probably your use in meth kind of led up to it happening. . . . The situation you put yourself in by your drug use put you there.

N.T., 5/25/2023, at 65. Admittedly, the court did not explicitly link its factual findings to the allegations in the petition. However, this case was a relatively straightforward single issue dependency case. Mother conceded she had used methamphetamine repeatedly, including times while she was pregnant. The only issue in dispute was whether Mother was likely to stop using methamphetamine. While Mother claimed she would stop, the trial court was not required to credit Mother's testimony. The court set forth its finding that Mother was an addict who would not stop using methamphetamine without the involvement of CYS.

In addition, Mother baldly asserts that the court failed to specify its findings in the adjudication orders. In each petition for dependency the sole allegation proffered by CYS was "that it would be contrary to the welfare, safety and health of the child to remain under the care of [Mother] due to allegations of substance abuse, specifically, methamphetamine." Dependency Petitions at 3. Each adjudication order stated that "[t]he [c]ourt finds that

clear and convincing evidence exists to substantiate the allegations set forth in the petition." Orders of Adjudication and Disposition, 6/2/2023.

Further, to the extent Mother asserts that her due process rights were violated because the court entered the orders eight days after the hearing, which was outside the timeframe specified by Rule 1408, we find this argument waived for failure to develop it. **See In re W.H.**, 25 A.3d 330, 339 n.3 (Pa. Super. 2011). Even if not waived, we would not disturb the orders because Mother claims no prejudice, and we discern none, by the orders being entered eight days after the hearing. Overall, the trial court clearly specified that it found by clear and convincing evidence the sole allegation set forth by CYS in its dependency petitions for the Children as required by Rule 1408. Accordingly, the court did not err.

In her final issue, solely with regard to the middle child, K.S.T., Mother argues that CYS failed to technically comply with Pa.R.J.C.P 1330(a)(2) by failing to file a dependency petition prior to the May 25, 2023 hearing. **See** Mother's Brief at 22. Mother asserts that CYS's failure to file and serve the petition is a material defect that has prejudiced her. **See id.** at 23-24. In support of her position, Mother relies upon Pa.R.J.C.P. 1330(a)(2) (requiring that a dependency petition be filed within twenty-four hours of a shelter care hearing) and 1331(C) (requiring that an affidavit of service of a petition shall be filed prior to an adjudicatory hearing).

As detailed above in the factual and procedural history, there is no dispute that a procedural irregularity occurred with respect to K.S.T., in that CYS neglected to file a dependency petition naming him until June 2, 2023, at which point it was immediately granted based upon the evidence already adduced at the May 25, 2023 hearing. Nonetheless, the certified record reflects that a GAL was appointed to represent all three Children and that the May 25, 2023 hearing was conducted in a fashion demonstrating that CYS was seeking to declare all three Children dependent. *See* N.T., 5/25/2023, at 3 ("Your Honor, I'm convened in the matter of [K.T.], who is 28 days old. . ., [K.V.T.], age six, . . . and [K.S.T.], age two . . . ."). Mother did not raise this issue at any point during the hearing. As such, it is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Even if preserved, we conclude that CYS's error in failing to file and serve a dependency petition naming K.S.T. prior to the May 25, 2023 adjudicatory hearing was harmless.

While our review has uncovered no Pennsylvania precedent authoritatively setting forth the standard for harmless error in the context of dependency proceedings, we note that this Court has recently addressed the issue in a non-precedential memorandum. *See Interest of V.B.*, 2023 WL 5550150, at *5 (Pa. Super. 2023) (non-precedential memorandum). And we find the *V.B.* panel's analysis persuasive, such that our analysis is virtually identical.

The contours of a harmless error analysis under Pennsylvania law depend upon the type of case presented. We see no reason to conclude that a harmless error analysis is improper in dependency appeals. As such, to conclude the error here was harmless, we must find that CYS's failure to file and serve the petition could not have had any impact upon the trial court's decision. **See A.J.R.-H.**, 188 A.3d 1157, 1171 (Pa. 2018). In rendering this determination, we review the record as a whole. **See id.** at 1170-71. As our discussion above reveals, we easily find that CYS's failure had no impact on either the procedure or the outcome of this proceeding.

Critically, Mother's arguments concerning CYS's failure to file a dependency petition with respect to K.S.T. prior to the May 25, 2023 hearing do not contain any discussion concerning how this oversight impacted the trial court's decision or her presentation of her case. Nonetheless, Mother argues that this procedural oversight was a "material defect" that should automatically invalidate the dependency proceedings *en toto*. **See** Mother's Brief at 24 ("[T]he Agency's violation of Rule 1330 is a material defect in the process that does not allow the trial court to conduct a hearing as no pleading exists before the trial court[.]"). Tellingly, Mother has cited no legal authority for her proposition that a defect in pleadings has this dramatically preclusive effect upon the dependency proceedings.

At the adjudicatory hearing, all parties presented evidence and arguments that addressed the alleged dependency of all three Children,

- 14 -

including the middle child, K.S.T. It is evident that Mother was fully aware that CYS requested the adjudication of dependency for all three Children and she was provided with a full opportunity to respond to these allegations.

Critically, Mother has failed to allege or demonstrate how the proceedings would have been materially impacted if a separate dependency petition had been properly filed with respect to K.S.T. Accordingly, we find no merit in Mother's third claim. As detailed above, the evidence of record fully supports the trial court's conclusions, which were not affected by CYS's failure to timely file a dependency petition with respect to K.S.T.

As the record supports the orders adjudicating the Children dependent, the court did not err or abuse its discretion.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/28/2023

- 15 -