J-A12006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.P., MOTHER | |
| | No. 3002 EDA 2023 |

Appeal from the Order Entered November 2, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000803-2023

BEFORE:   PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:                **FILED AUGUST 5, 2024**

Appellant, J.P. ("Mother"), appeals from the November 2, 2023 order of adjudication and disposition with respect to her son, S.R. ("Child"), born in July 2007.[1]  Upon careful review, we affirm.

The certified record reveals that Child suffers from oppositional defiance disorder ("ODD") and attention deficit hyperactivity disorder ("ADHD").  **See** N.T., 11/2/2023, at 12, 24.  In June 2023, Child was ready to be successfully discharged from drug and alcohol treatment at Manos House, an inpatient rehabilitation facility that he had been admitted to after being transferred from another inpatient facility in November 2022.  **See id.** at 9-10.  The trial court

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Child's father, S.R. ("Father"), did not appeal.

aptly set forth the factual and procedural history in its Rule 1925(a) opinion, as follows:

On June 26, 2023, the Department of Human Services [("DHS")] received a General Protective Services [("GPS")] report stating that [Mother] would not pick up [Child] from his inpatient treatment at Manos House for drug and alcohol abuse[]; Mother stated that she did not want [Child] to return to [her] home because [Child] is abusive to her; [Child] was ready for discharge and needs behavioral support; [Child] has a history of mental health issues; and that [F]ather is not involved in his care. The report was determined to be valid.

On June 27, 2023, DHS met with [Child], who stated he did not want to return to Mother's care due to the conflicts between them. [Child] admitted smoking marijuana, skipping school, and becoming physically violent with Mother in the past. [Child] stated he has been diagnosed with [] (ODD) and is prescribed medication. [Child] stated he does not have a relationship with his father or a relationship with the paternal side of his family.

DHS learned Mother had participated in family therapy with [Child] at Manos [H]ouse and had been very involved in planning his treatment.

On June 28, 2023, DHS conducted a home visit. Mother stated to DHS she feels unsafe with [Child] in the home and would not retrieve him from Manos [H]ouse. Mother stated [Child] physically struck her in the face, pushed her, and slapped her in the past, that he had stolen money, and that she had called for police several times. Mother confirmed [Child] had been diagnosed with ODD and had been hospitalized for mental health treatment several times. She stated she did not know [F]ather's whereabouts and there were no other family members willing to care for [Child].

. . .

On August 29, 2023, DHS obtained an [order of protective custody] and placed [Child] in a First Choice group home.

On September 12, 2023, DHS filed a [d]ependency [p]etition for Child[.] The petition asked the [c]ourt to adjudicate

[Child] dependent, commit [Child] to DHS, and order the disposition best suited to the welfare of [Child.]

Trial Court Opinion, 2/1/2024, at 1-3; *see also* N.T., 11/2/2023, at 10-16.

The court conducted an evidentiary hearing on November 2, 2023, at which time Child was sixteen years old. DHS presented the testimony of its social worker, Patrice Day, and the Community Umbrella Agency ("CUA") case manager, Makia Harrison. Mother appeared but did not testify.

By order dated and entered November 2, 2023, the trial court adjudicated Child dependent pursuant to 42 Pa.C.S.A. § 6302(1) and (6). Mother timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In response, the trial court filed its Rule 1925(a) opinion on February 1, 2024.

On appeal, Mother raises the following issue:

Did the trial court err as a matter of law and abuse its discretion by adjudicating Child dependent based on Mother's present inability to provide proper parental care and control where [DHS] failed to present clear and convincing evidence to support that finding?

Mother's Brief at 3.

Our standard of review for dependency cases is as follows.

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

- 3 -

This Court has stated:

To adjudicate a child dependent based upon lack of parental care or control, a juvenile court must determine that the child:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

42 Pa.C.S.A. § 6302(1).

In accordance with the overarching purpose of the Juvenile Act "to preserve family unity wherever possible," *see* 42 Pa.C.S.A. § 6301(b), a child will be declared dependent only when he is presently without proper parental care or control, and when such care and control are not immediately available. *In the Interest of R.T*., 592 A.2d 55, 57 (Pa. Super. 1991). This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *C.R.S*., 696 A.2d at 845.

*M.B.*, 101 A.3d at 127-128.

Initially, Mother asserts that she "does not contest the adjudication of dependency based on Child's incorrigible behaviors pursuant to 42 Pa.C.S.A.

§ 6302(6)."[2]  Mother's Brief at 8.  Rather, Mother challenges the sufficiency

of the evidence pursuant to Section 6302(1).[3]

In finding that DHS had met its burden pursuant to 42 Pa.C.S.A. §

6302(1), the trial court stated the following:

> This [c]ourt found both Ms. Day's and Ms. Harrison's testimony
> were credible regarding Mother and [Child].  The [c]ourt found
> based on this testimony that there is clear and convincing
> evidence that Mother is not presently able to provide proper care
> and control for [Child] necessary for [Child]'s physical, mental,

---

[2] Section 6302(6) defines a "dependent child" as a child who "has committed a specific act or acts of habitual disobedience of the reasonable and lawful commands of his parent, guardian or other custodian and who is ungovernable and found to be in need of care, treatment or supervision."  42 Pa.C.S.A. § 6302(6).

[3] Mother's appeal is not moot.  This Court has explained:

> As a general rule, an actual case or controversy must exist at all
> stages of the judicial process, or a case will be dismissed as
> moot.... An issue before a court is moot if in ruling upon the issue
> the court cannot enter an order that has any legal force or
> effect.... Nevertheless, this Court will decide questions that
> otherwise have been rendered moot when one or more of the
> following exceptions to the mootness doctrine apply: 1) the case
> involves a question of great public importance, 2) the question
> presented is capable of repetition and apt to elude appellate
> review, or 3) **a party to the controversy will suffer some
> detriment due to the decision of the trial court**.

*In re M.B.*, 101 A.3d 124, 127 (Pa. Super. 2014) (emphasis in original) (citing *In re D.A.*, 801 A.2d 614, 616 (Pa. Super. 2002)).  In *M.B.*, the court determined that "because there can be collateral consequences to a finding of dependency, it is excepted from the mootness doctrine. . . . [B]ecause [the m]other would suffer a detriment in future dealings with DHS or in other proceedings regarding [the c]hild due to the finding of lack of proper parental care or control, the issue is not moot."  *See id.*  Likewise, here, because Mother would suffer the same collateral consequences, we conclude that her appeal is not moot.

moral, and emotional health. This is due to [Child's] behaviors and disobediences while in Mother's care. . . . Mother has demonstrated that she does not have the ability to control [Child] while he is under her care. Mother herself stated that she was not willing to have [Child] back in her home at the time of his discharge from Manos [H]ouse. Mother told Ms. Day that there was a safety concern [for] both her and [Child] if [he] were to reside at her home. Ms. Harrison testified that she does not believe it would be safe for [Child] to return to Mother's home at this time.

Trial Court Opinion, 2/1/2024, at 8-9; *see also* N.T., 11/2/2023, at 10-16, 21-22.

On appeal, Mother contends that the evidence was insufficient under Section 6302(1) because she "made reasonable attempts to control" Child's behavior over the years. *See* Mother's Brief at 8, 11-12 (citing N.T., 11/2/2023, at 11-13, 22) (Ms. Harrison stated that Mother "told me that she has tried for years [] different intervention methods for [Child]. She's tried family therapy. She's tried different therapy interventions. [Child] would not talk in therapy. He's been in different placements for the same issues."). Mother also asserts that she "actively participated in the Child's treatment, and she engaged in family therapy." *Id.* (citing N.T., 11/2/2023, at 22) (Ms. Day reported that Mother "was very involved in [Child's] treatment throughout his entire history. And even when he was in Manos House as well." Ms. Day and Ms. Harrison did not further describe what other intervention, if any, Mother attempted for Child.). In essence, Mother argues that her "decision not to allow Child to return to her home upon discharge from his inpatient rehabilitation program is insufficient to establish . . . [her] inability to provide

proper parental care." *Id.* In support of her argument, Mother relies upon the testimony of Ms. Day and Ms. Harrison. Mother emphasizes that Ms. Day, who was the initial caseworker assigned to investigate the GPS report, determined that the report was invalid for present inability. *See* N.T., 11/2/2023, at 10. In addition, Mother relies upon our decision in *In re K.A.D.*, 779 A.2d 540 (Pa. Super. 2001). Although we acknowledge Mother's conscientious attempts to parent Child, and Mother's sincere efforts, she is not entitled to relief.

Primarily, as aptly stated by DHS in its brief, the trial court, as the finder of fact, was not required to accept or agree with DHS's determination of the GPS report. *See R.J.T.*, *supra*. Further, although testimony revealed that Mother had previously utilized various methods of intervention, she was currently unable to provide proper parental care and control of Child based on his particular needs. *See M.B.*, *supra.* Ms. Day reported that "[Mother] stated that [Child] has been violent towards her in the past. He has other behavior issues including truancy, not following the rules in the household, and it's a safety concern for himself and her." N.T., 11/2/2023, at 11. Ms. Day also reported that Mother was unable to ensure that Child took his prescribed medications. *See id.* at 12. As such, Mother was unwilling to have Child return to her home. *See id.* at 11.

With respect to Mother's reliance upon *In re K.A.D.*, *supra*, we conclude that it is misplaced. In that case, this Court affirmed an order of

adjudication and disposition of the parents' fifteen-year-old daughter. The order directed that the child continue in the mother's care and custody subject to protective supervision by the child welfare agency. In *K.A.D.*, it was the child's father who appealed the order which found that he was not immediately able to provide the proper care for the child. In fact, the mother had sought the agency's help in controlling the child's behavior, and the agency ultimately filed a petition for dependency pursuant to Section 6302(5)[4] and (6). Moreover, there is no indication that the agency sought the child's removal from the mother's home.

In contrast, Mother in this case requested Child's out-of-home placement which clearly establishes her inability to provide proper parental care or control of Child. Further, Section 6302(1) was not at issue in *K.A.D.* inasmuch as the agency did not seek the child's dependency under that subsection. As such, Mother's reliance on that case is misplaced.

Rather, we agree with DHS in its appellee brief that *M.B.*, *supra*, controls in this matter. *See* DHS Brief at 4-6. In that case, similar to the case at bar, the mother merely appealed the trial court's determination that the child was dependent pursuant to 42 Pa.C.S.A. § 6302(1), not its determination regarding 42 Pa.C.S.A. § 6302(6). *See M.B.* 101 A3d at 125.

---

[4] Section 6302(5) defines a "dependent child" as a child who "while subject to compulsory school attendance is habitually and without justification truant from school." 42 Pa.C.S.A. § 6302(5).

The child in **M.D.** was a fifteen-year-old with bi-polar disorder and ADHD; refused therapy and medication; had set a fire in the family home; failed to follow the mother's rules; was taken into protective custody by DHS after Mother stated she feared the child, and the mother requested an out-of-home placement for the child. **See id.** at 125-129. This Court determined that "[t]hese allegations, once proven by clear and convincing evidence, demonstrated that [the c]hild has particularized mental health needs that [m]other did not meet such that she was without proper parental care and control and that such care was not immediately available." **Id.** at 129.

In the case *sub judice*, like the mother in **M.B.**, testimony at the dependency hearing revealed that both Mother and Child stated they did not want to reside together. **See** N.T., 11/2/2023, at 11-13. Specifically, Ms. Day testified that Mother was not willing to have Child back in her home upon his discharge from Manos House. **See id.** at 11-12. Ms. Day also testified that Child "did not believe that it was best for him to return home with [M]other either." **Id.** at 13. As such, the record supports the court's conclusion that "Mother is not presently able to provide proper care and control for [Child] necessary for [Child]'s physical, mental, moral, and emotional health." Trial Court Opinion, 11/2/2023 at 8.

Finally, Mother baldly asserts that the trial court's determination "suggests that **all parents** who have an incorrigible child have **categorically** failed to provide proper parental care and control, regardless of the parent's

efforts to exercise reasonable firmness and secure supportive services for their child." Mother's Brief at 13 (emphasis in original). Nothing in the record suggests that the trial court based its decision regarding 42 Pa.C.S.A. § 6302(1) merely on Child's incorrigible behavior, or adopted such a broad policy. Rather, the trial court found that Mother, under the particular facts of this case, was unable and unwilling to provide Child with proper parental care or control when she informed DHS that she did not want Child returned to her care following his discharge from Manos House.

Based on the foregoing, the trial court was well within its discretion to adjudicate Child dependent pursuant to 42 Pa.C.S.A. § 6302(1). Therefore, we conclude that Mother is not entitled to relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/5/2024