J-S05002-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.J., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 954 WDA 2023 |

Appeal from the Order Entered July 24, 2023
In the Court of Common Pleas of Erie County
Juvenile Division at No(s): CP-25-DP-0000131-2022,
CP-25-DP-0000132-2022, CP-25-DP-0000133-2022,
CP-25-DP-0000134-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: K.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.J., MOTHER | : | |
| | : | |
| | : | |
| | : | No. 242 WDA 2024 |

Appeal from the Order Dated July 21, 2023
In the Court of Common Pleas of Erie County
Civil Division at No(s): CP-25-DP-0000134-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.J., MOTHER | : | |
| | : | |
| | : | No. 243 WDA 2024 |

Appeal from the Order Entered July 21, 2023

J-S05002-24

In the Court of Common Pleas of Erie County
Orphans' Court at No(s): CP-25-DP-0000132-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.J., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 244 WDA 2024 |

Appeal from the Order Dated July 21, 2023
In the Court of Common Pleas of Erie County
Orphans' Court at No(s): CP-25-DP-0000133-2022

BEFORE: PANELLA, P.J.E., KING, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.: **FILED: March 21, 2024**

A.J. ("Mother") appeals from the orders entered in the Juvenile Court of Erie County changing the permanency goals of A.D. (d.o.b. 12/11), A.D. (d.o.b. 2/16), and G.K. (d.o.b. 10/17) to adoption and the permanency goal of J.K. (d.o.b. 7/09) to permanent legal custodianship ("PLC"). Counsel has filed an application to withdraw pursuant to **Anders v. California**, 386 U.S. 738 (1967).[1] Erie County Office of Children and Youth ("CYS") has filed an application to dismiss. We affirm in part and dismiss in part.

---

[1] The case, **In re V.E.,** 611 A.2d 1267 (Pa.Super.1992), authorized appointed counsel to file a petition to withdraw pursuant to **Anders** in an appeal involving the involuntary termination of parental rights. **See In re V.E.**, 611 A.2d at 1275.

- 2 -

Mother is the biological mother of J.K., A.D., A.D., and G.K. (collectively "the Children"). CYS filed dependency petitions for the Children on June 29, 2022, and the orphans' court adjudicated the Children dependent on June 7, 2022. The Children were placed in maternal grandmother's home at that time and the permanency goal was set to reunification. Shortly thereafter, the Children were removed from maternal grandmother's home and placed in their respective paternal grandfathers' homes. On July 15, 2022, A.D. and A.D. were removed from their paternal grandfather's home and placed in a confidential foster home.

The court held the first permanency review hearing on October 6, 2022. It found Mother noncompliant with her goals and added a concurrent goal of adoption to the Children's permanency plans. Mother's non-compliance and the Children's permanency plans stayed the same at the April 3, 2023, permanency review hearing. Mother's counsel appeared at the July 21, 2023, permanency review/goal change hearing, but the parties were informed at that time that Mother was incarcerated due to her arrest on burglary charges the prior evening. The court found Mother absented herself from the proceedings and continued in absentia.

After a full hearing, the court concluded that Mother failed to alleviate the circumstances that led to the Children's removal from her care. It determined that it would be in the best interest of A.D., A.D., and G.K. to change their permanent placement goal to adoption with concurrent PLC. The

- 3 -

court changed J.K.'s permanent goal to PLC (relative). Mother timely appealed and filed a concurrent statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(a)(2)(i). Counsel filed a petition to withdraw with this Court in which he argues Mother's claims are frivolous.

On September 27, 2023, during the pendency of this appeal, CYS filed petitions for the involuntary termination of Mother's parental rights to A.D., A.D., and G.K. On November 16, 2023, after a full evidentiary hearing, the court granted the petitions and entered decrees involuntarily terminating Mother's parental rights to the three children. J.K.'s permanent placement goal remained PLC (confidential kinship care).

Before reaching Mother's issues, we must first consider counsel's request to withdraw. **See Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa. Super. 2009).

The standard of review for an **Anders** brief is well-settled.

Court-appointed counsel who seek to withdraw from representing an appellant on direct appeal on the basis that the appeal is frivolous must:

(1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) file a brief referring to anything that arguably might support the appeal but which does not resemble a "no-merit" letter or *amicus curiae* brief; and (3) furnish a copy of the brief to the [appellant] and advise the [appellant] of his or her right to retain new counsel or raise any additional points that he or she deems worthy of the court's attention.

*Id.* (citations and quotation marks omitted); *see also Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005) (requiring counsel "to attach to their petition to withdraw a copy of [the] letter sent to their client advising him or her of their rights"). Further, our Supreme Court has held that *Anders* briefs must contain "a discussion of counsel's reasons for believing that the client's appeal is frivolous[.]" *Commonwealth v. Santiago*, 978 A.2d 349, 360 (Pa. 2009).

As this Court observed in our March 6, 2024, *per curiam* order, counsel's application to withdraw and brief meet the *Anders* and *Santiago* technical requirements and counsel provided Mother with the *Anders* brief, application to withdraw, and proper letter of notice. Specifically, counsel's *Anders* brief and application to withdraw comply with the applicable technical requirements and reveal that he has made "a conscientious examination of the record [and] determined that the appeal would be frivolous[.]" *Lilley*, 978 A.2d at 997 (citation omitted).

Additionally, counsel served Mother with a copy of the *Anders* brief and application to withdraw, and a letter of notice, which advised Mother of her right to retain new counsel or to proceed *pro se* and raise additional issues with this Court. *See id.* Further, the application and brief cite "to anything that arguably might support the appeal[.]" *Id.* (citation omitted). As noted by our Supreme Court in *Santiago*, the fact that some of counsel's statements

arguably support the frivolity of the appeal does not violate the requirements of **Anders**. **See Santiago**, 978 A.2d at 360-61.

Therefore, we must now "conduct [our] own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Lilley**, 978 at 998 (citation omitted).

The **Anders** brief raises one issue for our review:

> Whether the juvenile court committed an abuse of discretion and/or error of law when it determined that [CYS] established, by clear and convincing evidence, the grounds for a change in goal to adoption concurrent with permanent legal custodianship and permanent legal custodianship pursuant to 42 Pa.C.S. [§] 6351[(f).]

**Anders** Brief, at viii.

CYS argues that Mother's issue is moot as to A.D., A.D., and G.K., and no exception to the mootness doctrine applies. **See** Appellee's Brief, at 3-4; Appellee's Motion to Dismiss, 12/20/23, at ¶¶ 8-9. We agree.

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

**In re J.A.**, 107 A.3d 799, 811 (Pa. Super. 2015) (citation omitted). The Court will address an otherwise moot question if one of the following exceptions applies: "1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review,

or 3) a party to the controversy will suffer some detriment due to the decision of the trial court." ***In re M.B.,*** 101 A.3d 124, 127 (Pa. Super. 2014) (citation and emphasis omitted).

Instantly, Mother's challenge to the change to A.D., A.D., and G.K.'s permanency goals is moot. CYS filed petitions to terminate Mother's parental rights to the three children on September 27, 2023, during the pendency of the appeal. On November 16, 2023, after conducting a full evidentiary hearing, the orphans' court filed decrees terminating Mother's parental rights to the three children. Mother did not appeal the decrees, and her time for doing so has passed, rendering the decrees final. Therefore, any ruling made by this Court regarding A.D., A.D., and G.K.'s permanency goal change would have no legal force or effect. Therefore, we agree with CYS that the appeal as it pertains to the three children is moot and we grant CYS's motion to dismiss.

Further, we note that generally, Mother's claim regarding J.K. would be waived. Mother did not challenge J.K.'s permanent goal change to PLC in her Rule 1925(b) statement and, although she appears to raise this issue in her statement of questions involved, she abandons it in the argument section of her brief. ***See*** Concise Statement of Errors, 8/18/23, at 1; ***Anders*** Brief, at viii.

However, because this appeal involves an ***Anders*** brief and counsel's application to withdraw, we will conduct an independent review of J.K.'s change of goal issue to determine if it is frivolous as counsel contends.

We review goal change orders for an abuse of discretion. ***See Interest of D.R.-W.***, 227 A.3d 905, 917 (Pa. Super. 2020).

> When reviewing such a decision [,] we are bound by the facts as found by the trial court unless they are not supported in the record. Furthermore, in a change of goal proceeding, the trial court must focus on the child and determine the goal in accordance with the child's best interest and not those of his or her parents.

> At each review hearing concerning a child who has been adjudicated dependent and removed from the parental home, the trial court must consider: the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

> * * *

> In addition [, although] bound by the facts as found by the trial court and supported by the record, we are not bound by the trial court's inferences, deductions, and conclusions therefrom[.]

***In re K.J.***, 27 A.3d 236, 241 (Pa. Super. 2013) (citations and some brackets omitted).

The focus of "goal change proceedings, is on the safety, permanency, and wellbeing of the child and the best interests of the child must take precedence over all other considerations." ***Interest of H.J.***, 206 A.3d 22, 25 (Pa. Super. 2019). Section 6351(1) of the Juvenile Act provides, in pertinent part, that, when considering a petition for a goal change, the orphans' court must consider:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

*    *    *

(6) Whether the child is safe.

42 Pa.C.S.A. § 6351(f)(1)-(4), (6). "Once the court makes these findings, it must determine whether reunification, adoption, or placing the child with a legal guardian is best suited to the child's safety, protection, and physical, mental and moral welfare." *See* 42 Pa.C.S.A. § 6351(f.1). Although a PLC petitioner "is required to prove that reunification or adoption is not best suited to the child's safety, protection and physical, mental and moral welfare [,] … the procedural and substantive safeguards utilized to protect the rights of parents in termination cases are not applicable in PLC cases." *In re S.H.*, 71 A.3d 973, 979-80 (Pa. Super. 2013).

Instantly, the orphans' court aptly explains:

In consideration of the evidence and testimony presented, the Court found the Agency had met its burden by clear and convincing evidence which demonstrated that a goal change to adoption concurrent with permanent legal custodianship for [A.D.], A.D., and G.K, and a goal of permanent legal custodianship [for J.K.] was in the Children's best interest. The Children's physical and emotional needs are being met in their foster/kinship homes. Further, Mother has repeatedly demonstrated an inability to keep the Children safe both physically and emotionally while

they were in her care and since their removal. In fact, Mother has repeatedly made attempts to sabotage any progress the Children have made in their placements, resulting in the Court placing [A.D.], A.D. and J.K in confidential foster homes to keep them safe from Mother's erratic behaviors.

Further, Mother has failed to "alleviate the circumstances which necessitated the original placement" and has not demonstrated any compliance with her treatment plans which are by their nature designed to effectuate reunification. *See* 42 Pa. C.S.A. § 6351(f). Mother continued to use controlled substances, specifically methamphetamine, yet she refused to acknowledge she had a drug problem or engage in [c]ourt ordered treatment for it. Actually, Mother repeatedly refused or was unable to engage in any portion of her treatment plan and became combative with anyone that tried to assist her in doing so.

Mother has not only refused to alleviate the circumstances that necessitated the Children's placement, she has refused to acknowledge them. Perhaps the best example of her inability to internalize her own behaviors and accept responsibility for the position she currently finds herself in lies in the messages she sent to [A.D.], targeting A.D. and attempting to alienate the girls from each other, due to A. D.'s disclosure of physical abuse by Mother that in part led to the Children's removal. Mother's failure to acknowledge the circumstances that led to the Children's placement makes it impossible for her to alleviate them. In fact, the record in this matter reflects that despite being given a year to do so, Mother never even tried.

The [c]ourt cannot put the Children's lives on hold in the hopes that Mother will somehow "summon the ability to handle the responsibilities of parenting." *See Interest of HJ*, 206 A.3d 22, 25 (Pa. Super. 2019). Mother has repeatedly demonstrated that she is not a reliable or safe reunification resource firmly committed to the exclusive health, safety, and well-being of the Children. Consequently, based on the cumulative factors, the change of goal … is in the Children's best interest.

Orphans' Court Opinion, 10/17/23, at 11-13 (some citation formatting provided).

We discern no abuse of discretion. During the first review period after the Children were declared dependent, Mother actively used illegal substances, was not treating her mental health, and was not able to parent appropriately. **See** Court Summary and Addendum, 10/11/22. At the first permanency review hearing on October 6, 2022, the court found that Mother had been noncompliant with her treatment plan and had made no progress in remedying the circumstances that led to the Children's removal from her home. **See** Permanency Review Order, 10/10/22.

Over the next six months, Mother continued to abuse illegal substances and was criminally charged for stalking A.D., A.D., and G.K. **See** N.T. Hearing, 4/3/23, at 4-5. At the April 3, 2023, permanency hearing, Mother denied having a drug problem and refused the court's offer for her to engage in treatment. However, just days before the hearing Mother admitted to using methamphetamines. **See id.** at 24-25. During this period, J.K. also was struggling with mental health issues and hospitalized for treatment. J.K. broke into an abandoned warehouse and he had to be moved to a confidential foster home that could better address his needs. **See id.** at 7-8. The orphans' court found Mother noncompliant with her treatment plan and that she had made no progress in remedying the circumstances that led to the Children's placement. **See** Permanency Review Order, 4/5/23.

Mother was not present at the July 21, 2023, permanency review and goal change hearing because she had been arrested on burglary charges the

night before. *See* N.T. Hearing, 7/21/23, at 3. Rhiannon Bernardini testified on behalf of CYS and stated that she met with Mother approximately one month prior to the goal-change hearing to inform Mother that CYS had requested a goal change and to review Mother's treatment plan with her. *See id.* at 6. According to Bernardini, Mother has not made any progress with her treatment plan and is unable to remedy the situation that led to the Children's removal. *See id.* at 6-7. Mother is still in active addiction and used methamphetamines five days prior to their meeting. *See id.* Mother was not getting drug tests because she either did not have a ride or would have had a positive test result. *See id.* Mother is homeless. *See id.* Because Mother had not visited with the Children since before the April 3, 2023, permanency hearing, she was unable to participate in any parenting program. *See id.* at 6-7.

J.K. has had been arrested and adjudicated delinquent, but his current placement is "ready, willing and able to keep" him. *Id.* at 8. The Children's guardian *ad litem* agreed with the goal changes. *See id.* at 20.

Based on the above and the orphans' court's well-reasoned explanation, we discern no abuse of discretion in its decision to change J.K.'s permanency goal to PLC.[2] Moreover, upon independent review, we have found no other

---

[2] Similarly, although Mother's challenge to the goal changes of A.D., A.D., and G.K. is moot, the facts of record described above equally demonstrate that the orphans' court properly exercised its discretion in changing A.D., A.D., and G.K.'s permanency goals to adoption.

non-frivolous issues. We affirm the goal change order as to J.K., grant CYS's motion to dismiss, dismiss the appeals as to A.D., A.D., and G.K., and grant counsel's application to withdraw.

CYS's motion to dismiss granted. Appeals at No. 242, 243, and 244 WDA 2024 dismissed. Order in case number 954 WDA 2023 affirmed. Counsel granted leave to withdraw.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/21/2024